THE STATE, ON THE RELATION OF P. S. WILTZ, *v.* ALEXANDER DERBES.

The clerks of the several courts do not continue to hold their offices after a general election until the new Governor enters upon the discharge of his duties. Article 149 of the Constitution only provides the day of their election, and does not fix the period when they shall cease to perform their duties.

APPEAL from the Second District Court of New Orleans, *Morgan*, J. *Dufour*, for plaintiff. *Preaux*, for defendant and appellant.

SPOFFORD, J. (MERRICK, C. J., absent.) The relator was elected Clerk of the Second District Court of New Orleans on the first Monday in November, 1855, and, having been duly commissioned and qualified, demanded a delivery of the books, papers, &c., belonging to the office. The incumbent, Alexander Derbes, conceiving that he was entitled under the law to retain possession of the office until the fourth Monday in January, 1856, declined to surrender the archives to his successor, whereupon the latter sued out a mandamus from the Judge of the Second District Court, which, upon a hearing, was made peremptory.

By an amicable understanding between the parties, all delays have been waived, and the case has been submitted to us on appeal, for the purpose of settling the construction of the Constitution and laws upon the point in controversy.

The general rule prescribed by law is, that the old incumbent shall continue to discharge the duties of his office until his successor is elected, commissioned and qualified, and no longer.

"All State and parish officers shall, after the expiration of their term of ser-  vice, continue to perform the duties of their offices until their successors or themselves, in case of appointment or election, shall be inducted into office by performing the formalities required by existing laws; so that no interruption may occur in the discharge of any public duty required by said offices, under the same penalties, bonds, obligations and securities as were given and entered into by them at the time they were elected to said office." Act March 15th, 1855, §.2. (Session Acts, p. 350.)

But the appellant maintains that the Constitution of 1852, by a special provision, extended his term to the fourth Monday of January, 1855, and that the Legislature, in the Act of April 28th, 1853, (Session Acts, p. 158,) adopted that construction.

A comparison of the articles of the Constitution of 1852 has brought us to the conclusion that this interpretation is erroneous. The article mainly relied upon by the appellant is as follows:

"Art. 149. The first term of service of the District Attorneys and the clerks of the inferior courts to be ordered and established under this Constitution, shall be regulated by the term of service of the first Governor, so that a new election for these officers shall be held on the first Monday of November, 1855."

As the Governor cannot enter upon the discharge of his duties until the fourth Monday of January next, (Art. 37,) the inference is drawn that the newly-elected clerk cannot.

But the framers of the Constitution only had in contemplation the fixing of the day for the election of clerks in Article 149, and not the period when they should cease to perform their duties. It is only as to the day of their election that the term is to be regulated by that of the Governor; "the first term of service of these clerks shall be regulated by the term of service of the first Governor, so that a new election for these officers shall be held on the first Monday of November, 1855." If the intention had been such as the appellant contends for, the article should have gone on to add: "and they shall be inducted into office on the fourth Monday of the following January."

We cannot add such a clause to the article, as we do not conceive that it is fairly to be implied from all the provisions of the Constitution taken together.

Article 79 declares that "clerks of the inferior courts in this State shall be elected for the term of four years; and should a vacancy occur subsequent to an election, it shall be filled by the Judge of the court in which such vacancy exists, and the person so appointed shall hold his office *until the next general election.*"

By Article 125, "the Legislature may provide by law in what case officers shall continue to perform the duties of their offices until their successors shall have been inducted into office."

It is in pursuance of this constitutional provision that the Act of March 15th, 1855, already cited, has been passed.

There existed a reason for postponing the installation of the Governor, which has no application to clerks of courts.

The votes for Governor have to be counted by the General Assembly, and the General Assembly does not meet until the third Monday in January. Constitution, Articles 35, 5, 152, 153.

No such delay is necessary as was contemplated in counting the votes and officially declaring the result of the election for clerks of courts; on the contrary, special provision has been made for clothing them with their commissions at an earlier period.

The Act of April 28th, 1853, (Session Acts, p. 158,) upon which the appellant also relies, follows the language of the Article 149 of the Constitution, which we have already construed.

It is therefore unnecessary to comment upon this statute, as it adds nothing to the strength of the appellant's case.

If a legislative interpretation of Article 149 is to be regarded, it would seem to be in favor of the appellee. See Act April 28th, 1853, § 19, (Session Acts, p. 192,) and an Act approved same date, §§ 2 and 3, (Session Acts, p. 152.)

It is therefore decreed that the judgment of the District Court be affirmed, with costs.